UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

United States of America,

        Plaintiff,

vs.                  REPORT AND RECOMMENDATION

Paul Isauro Ramirez,

        Defendants.         Crim. No. 04-497 (JRT/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the following Motions of the Defendant Paul Isauro Ramirez ("Ramirez"):

    1.    Ramirez's Motion to Dismiss for Vindictive Prosecution and Outrageous Governmental Conduct.

    2.    Ramirez's Motion to Suppress Evidence Obtained as a Result of Search and Seizure.

A Hearing on the Motions was conducted on May 23, 2005, at which time, Ramirez appeared personally, and by Andrea K. George, Assistant Federal Defender, and the

Government appeared by Lisa A. Biersay, Assistant United States Attorney.   For reasons which follow, we recommend that Ramirez's Motion to Dismiss for Vindictive Prosecution and Outrageous Governmental Conduct be denied, and that his Motion to Suppress Evidence Obtained as a Result of Search and Seizure be denied.

## II.   Factual Background

As is pertinent to the Motions presented, Ramirez is charged with one Count of being a Felon in Possession of Ammunition, in violation of Title 18 U.S.C. §§922(g)(1), and 924(e)(1).   The alleged violation is said to have occurred from on or about June 19, 2002, to on or about June 21, 2002, in this State and District.   As pertinent to those charges, and to the Motions pending before us, the operative facts may be briefly summarized.[1]

---

[1]Rule 12(e), Federal Rules of Criminal Procedure, provides that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record."   As augmented by our recitation of factual findings in our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion.   Of course, these factual findings are preliminary in nature, are confined solely to the Motions before the Court, and are subject to such future modification as the subsequent devel-opment of the facts and law may require.   See, United States v. Moore, 936 F.2d 287, 288-89 (6th Cir. 1991); United States v. Prieto-Villa, 910 F.2d 601, 610 (9th Cir. 1990).

In support of the Search Warrant at issue,[2] Stephen Young ("Young"), who is the Chief Deputy Sheriff for Wadena County, Minnesota, and who was the Affiant for the Search Warrant, related that Ramirez had been convicted in the Wadena County District Court, for the felony crime of assault in the fourth degree, and that Ramirez was sentenced for that conviction on March 19, 2002. On June 19, 2002, Young spoke with a sixteen (16) year-old individual, who Young knew, but who wished to remain anonymous for fear of retribution. The individual informed Young that s/he had heard two gunfire "reports" originating from the direction of Ramirez's residence, which is a camper located at 10856 CORD 13, in Wadena County, Minnesota. Young further related that the individual, who knew Ramirez, had observed Ramirez at or near his residence, holding a long firearm, which the individual believed to be a shotgun. The individual reported that s/he thought that Ramirez had fired the weapon to the east, in the direction of CORD 13.

---

[2]Although we understand that two Search Warrants were issued for Ramirez's property -- namely, one for the trailer and/or camper, and another for a car -- the only Search Warrant that is at issue here is the Warrant to search Ramirez's trailer and/or camper, because nothing was seized from the car. Accordingly, insofar as Ramirez challenges the validity of the Warrant to search the car, we deny that aspect of the Motion as moot, and hereinafter, when we reference the "Search Warrant," or "Warrant," we refer to the one for the trailer and/or camper.

Young also spoke with Angel Myers ("Myers"), who also lives at 18056 CORD 13, and who informed Young that Ramirez resides in the camper trailer, which was parked at 10856 CORD 13, and that he frequently visited Myers's home.  The Search Warrant was issued on June 21, 2002, and it was executed at 12:55 o'clock p.m., on that same date.  See, Government Exh. 1.

Ramirez was arrested in June of 2002, and after being tried in the Minnesota State Court for the offense of being a felon in possession, he was convicted in October of 2002, and sentenced to thirty-nine (39) months in prison.   Ramirez appealed his conviction, which was reversed by the Minnesota Court of Appeals, in November of 2003, and he was subsequently released from prison.  On December 21, 2004, Ramirez was indicted in the District Court of Minnesota, on Federal charges of being a felon in possession of ammunition, and he was arrested in March of 2005.[3]

III.  Discussion

Ramirez seeks the dismissal of the Federal Indictment, which was returned against him.  Ramirez asserts that the facts and circumstances of the incident, which

_____

[3]Since no one testified at the Suppression Hearing, we glean the foregoing facts, regarding the State and Federal charges against Ramirez, from the representations of the attorneys, which do not appear to be in dispute, at least for the purposes of these Motions.

gave rise to the Indictment, have been available to the Government since his arrest in 2002, and he contends that the Federal prosecution should not be allowed to proceed where, as here, the Government has been allowed to "test[] the waters" with a prior State prosecution.   Ramirez further argues that the subsequent Federal prosecution violates his statutory and constitutional rights to a speedy Trial, that it violates his due process rights, under the Fifth Amendment, and that the prosecution is vindictive and retaliatory.   In addition, Ramirez requests that we review the four corners of the Search Warrant for probable cause.   We address the Motions, in turn.

A.     Ramirez's Motion to Dismiss the Indictment.

1.     The Double Jeopardy Clause.

a.     Standard of Review.   The Fifth Amendment of the United State Constitution states, in pertinent part, that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb * * *."   "The dual sovereignty doctrine provides that although a defendant may not be prosecuted twice by the same sovereign for the same acts, a subsequent prosecution by a separate sovereign does not violate the Constitution."   United States v. Leathers, 354 F.3d 955, 959-60 (8th Cir.), cert. denied, --- U.S. ---, 125 S.Ct. 285 (2004)[quotation omitted].   Accordingly, a Federal prosecution, which follows a State prosecution of the same individual for the

same criminal acts, does not violate the Double Jeopardy clause.  See, <u>United States v. Basile</u>, 109 F.3d 1304, 1306-07 (8th Cir. 1997).  However, the Supreme Court, in <u>Bartkus v. Illinois</u>, 359 U.S. 121, 123-24 (1959), suggested, in dicta, "that a subsequent state prosecution that is a 'sham and cover' may violate the Double Jeopardy Clause if the state prosecutors were merely the 'tools' of the federal government."  <u>Id.</u> at 960.

b.   <u>Legal Analysis</u>.  Here, Ramirez was first prosecuted in the State Courts of Minnesota and, following his successful appeal, he was indicted in Federal Court.  In <u>United States v. Leathers</u>, supra at 960, the Court noted that the State of Missouri, and the United States, are separate sovereigns.  Similarly, the State of Minnesota, which first pursued criminal charges against Ramirez, is a separate sovereign from the United States, which has obtained the Indictment at issue here, and therefore, the Double Jeopardy Clause of the Fifth Amendment is inapplicable.  Furthermore, even if we were to assume that the <u>Bartkus</u> exception applied to subsequent Federal prosecutions, as opposed to subsequent State prosecutions, which it has never been held to do, we find that the facts presented in the Record before us do not support a finding that the Federal prosecution is a "sham and cover."

In <u>United States v. Leathers</u>, supra, the defendant pointed to three separate instances of contact between the State and Federal prosecutors, inclusive of the following: 1) the State's referral of the matter to the Federal Government; 2) the State's speculation that the defendant would receive a relatively short sentence in State Court, which was mentioned to the Federal prosecutor; and 3) the presence of the defendant's former counsel, who withdrew because of irreconcilable differences, in the United States Attorney's Office.   The Court held that those contacts were insufficient to establish that the Federal prosecution was a "sham and cover."   In particular, the Court stated that "[a] referral made by a state prosecutor does not undermine the independence of federal prosecutors, regardless of the state prosecutor's motives in making the referral," because "[t]he inquiry is not whether the prosecution would have taken place but for the referral, but rather whether the state has 'effectively manipulated the actions of the federal government, so that the federal officials retained little or no independent volition.'"   <u>United States v. Leathers</u>, supra at 960, quoting <u>United States v. 38 Whalers Cove Drive</u>, 954 F.2d 29, 38 (2nd Cir.), cert. denied, 506 U.S. 815 (1992).

Here, we have not been presented with any evidence, whatsoever, that there was any communication between State and Federal authorities, regarding this matter.

Furthermore, the mere fact that the Federal prosecution was not initiated until after Ramirez successfully appealed his conviction is insufficient to support an allegation that the current prosecution is a "sham and cover."  See, United States v. Basile, supra at 1307 (rejecting the defendant's Double Jeopardy claims, where the defendant was acquitted on State charges, and then tried on Federal charges, which arose from the same events).   Accordingly, we find that the Double Jeopardy Clause, of the Fifth Amendment, does not afford Ramirez any protections under these circumstances.

> 2.   The Speedy Trial Act.

> a.   Standard of Review.  "Under the Speedy Trial Act * * *, a federal criminal defendant must be brought to trial within seventy days of the filing of his indictment or his arraignment, whichever is later." United States v. Yerkes, 345 F.3d 558, 561 (8th Cir. 2003), citing Title 18 U.S.C. §3161(c)(1).   "To determine whether the right to a speedy trial has been violated, we count the days between arraignment and trial," excluding certain periods of time, as delineated by the statutory provisions of the Speedy Trial Act.  Id., citing Title 18 U.S.C. §§3161(d) and (h). "After these days are excluded, if the total number of days exceeds seventy, then upon a defendant's motion, the district court must dismiss the indictment."  Id., citing Title 18 U.S.C. §3162(a)(2).   The defendant bears the burden of showing that the Speedy

Trial Act was violated.   See, <u>United States v. Cordova</u>, 157 F.3d 587, 599 (8th Cir.

1998), citing <u>Title 18 U.S.C. §3162(a)(2)</u>; see also, <u>United States v. Neal</u>, 27 F.3d

1035, 1042 (5th Cir. 1994), cert. denied, 513 U.S. 1179 (1995).

        b.    <u>Legal Analysis</u>.  Ramirez was arraigned on May 2, 2005, and

his Trial is currently scheduled to begin on July 11, 2005.  Since we begin counting the

seventy-day period on May 3, 2005, see <u>United States v. Yerkes</u>, supra at 561, a literal

counting of the seventy days ends on July 11, 2005, which satisfies the requirements

of the Speedy Trial Act.  Furthermore, we note that the "delay resulting from any

pretrial motion, from the filing of the motion through the conclusion of the hearing on,

or other prompt disposition of, such motion," as well as the "delay reasonably

attributable to any period, not to exceed thirty days, during which any proceeding

concerning the defendant is actually under advisement by the court," is excluded from

the seventy-day period.  See, <u>Title 18 U.S.C. §§3161(h)(1)(F) and (J)</u>.  Ramirez filed

several pretrial Motions on May 13, 2005, regarding which we conducted a Hearing

on May 23, 2005, and we have had the matter under advisement ever since.  Those

periods of time are excludable under the Speedy Trial Act, see <u>id.</u>, and accordingly,

we find that there has been no violation of the Speedy Trial Act.[4]  See also, United States v. Titlbach, 339 F.3d 692, 698-99 (8th Cir. 2003).

Additionally, we reject any contention, by Ramirez, that the Speedy Trial Act should have begun to run as of the initiation of the State charges, or was somehow impacted by the delays occasioned by, and after, the State proceedings.  See, United States v. Beede, 974 F.2d 948, 950-51 (8th Cir. 1992)("It is an undisputed rule that a **state** arrest does not trigger the Speedy Trial Act's clock, even if the arrest is for conduct that is the basis of a subsequent indictment for a federal offense.")[internal quotations omitted][emphasis in original]; Johnson v. United States, 2005 WL 1384051 at *3 (W.D. Mo., June 8, 2005)("A state arrest that is the basis of a subsequent federal indictment does not begin the limitations period set out in section 3161(b).")[citations omitted];  see also,  United States v. Thomas,  55  F.3d  144,  147-48  (4th  Cir. 1995)(holding that the defendant's statutory and constitutional rights to a speedy Trial were not violated, where the Federal Government failed to indict him for more than two  years  after  it  had  issued  a  Criminal  Complaint,  Arrest  Warrant,  and  Federal

---

[4]Since Ramirez was arrested subsequent to the filing of the Indictment, the provisions of Title 18 U.S.C. §3161(b), which require that the Indictment be filed within thirty days of a defendant's arrest, are inapplicable.

detainer, during which time, the defendant was held in the custody of State authorities, on State charges); cf., <u>United States v. Garner</u>, 32 F.3d 1305, 1309 (8th Cir. 1994)(stating that, in the context of the Sixth Amendment right to a speedy Trial, "[t]he arrest on state charges does not engage the speedy trial protection for a subsequent federal charge").  We find no evidence in the Record to support the contention that the State proceedings were a "ruse" by the Federal Government to detain Ramirez for later prosecution, or to violate, or evade, the requirements of the Speedy Trial Act. Cf., <u>United States v. Grajales-Montoya</u>, 117 F.3d 356, 366 (8th Cir. 1997)(holding that the Speedy Trial Act was not triggered by the defendant's detention for civil deportation proceedings, where there was neither evidence that the "detentions were a ruse to evade the Speedy Trial Act," nor evidence that the Federal officials had "colluded with civil authorities to have those authorities detain a defendant pending federal criminal charges"); see also, <u>United States v. Meyer</u>, 906 F.2d 1247, 1252 (8th Cir. 1990)(rejecting the defendant's argument that the Government violated the "spirit of the Act" as "completely without merit"), citing <u>United States v. Leone</u>, 823 F.2s 246, 248-49 (8th Cir. 1987).

3.      The Sixth Amendment Right to a Speedy Trial.

a.      Standard of Review. Unlike the Speedy Trial Act, "'[t]he Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences,' and no Sixth Amendment right to a speedy trial arises until charges are pending." United States v. Perez-Perez, 337 F.3d 990, 995 (8th Cir. 2003), quoting United States v. Sprouts, 282 F.3d 1037, 1042 (8th Cir. 2002). In order to "'trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay.'" United States v. Brown, 325 F.3d 1032, 1034 (8th Cir. 2003), quoting Doggett v. United States, 505 U.S. 647, 651-52 (1992). Only when the delay is "presumptively prejudicial" must a Court conduct a speedy Trial analysis by weighing the following four factors: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) the prejudice to the defendant. Id.

"'[P]resumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the [four-factor] enquiry." Id. at 1035, quoting Doggett v. United States, supra at 652 n. 1. The Courts have generally held that "[a] delay approaching

- 12 -

a year may meet the threshold for presumptively prejudicial delay requiring application of the Barker [v. Wingo, 407 U.S. 514, 530 (1972)] factors." United States v. Titlbach, supra at 699.

         b.     Legal Analysis. We have already found that there was no violation of the Speedy Trial Act in this matter. "It would be unusual to find the Sixth Amendment has been violated when the Speedy Trial Act has not." United States v. Titlbach, supra at 699, citing United States v. Sprouts, supra at 1042. Here, Ramirez was indicted on December 21, 2004, and, as we have noted, his Trial is scheduled to commence on July 11, 2005, which is a span of a little less than seven (7) months. We find that the seven-month delay is not presumptively prejudicial. See, United States v. Titlbach, supra at 699 (finding that an eight-month delay was not presumptively prejudicial); United States v. White Horse, 316 F.3d 769, 774 (8th Cir. 2003)(finding that a nine and one-half month delay was not presumptively prejudicial); United States v. McFarland, 116 F.3d 316, 218 (8th Cir. 1997)(finding that a seven-month delay did not warrant a Sixth Amendment analysis). As a result, we need not engage in the full four-factor analysis. See, United States v. Titlbach, supra at 699 ("Where no presumptively prejudicial delay existed, we need not examine the remaining three factors under Barker.").

- 13 -

Furthermore, we find, as we did in our discussion of the Speedy Trial Act, that any delays, which were occasioned by the resolution of the pending State charges, do not impact upon the Sixth Amendment analysis.  See, United States v. Perez-Perez, supra at 996 (finding that the delay, which was attributable to the pendency of State charges, should not be counted against the Federal Government); United States v. Garner, supra at 1309 (8th Cir. 1994)("The arrest on state charges does not engage the [Sixth Amendment] speedy trial protection for a subsequent federal charge"), citing United States v. MacDonald, 456 U.S. 1, 10 n. 11 (1982)("Of course, an arrest or indictment by one sovereign would not cause the speedy trial guarantee to become engaged as to possible subsequent indictments by another sovereign."); United States v. Thomas, supra at 147-48 (holding that the defendant's statutory and constitutional rights to a speedy Trial were not violated, where the Federal Government failed to indict him for more than two years after it had issued a Criminal Complaint, Arrest Warrant, and Federal detainer, during which time the defendant was held in the custody of State authorities, on State charges).  Any additional pre-indictment delay, which occurred between Ramirez's release from custody on the State charges, and the issuance of the Federal Indictment, has no bearing on our discussion of the Sixth Amendment right to a speedy Trial.  See, United States v. Garner, supra at 1308 n. 4

("Normally, in the absence of 'accusation,' the right to a prompt indictment is protected by the statute of limitations and the due process clause of the Fifth Amendment."), citing <u>United States v. Stierwalt</u>, 16 F.3d 282, 284 (8th Cir. 1994) (same); see also, <u>United States v. MacDonald</u>, supra at 6-7 ("Any undue delay after charges are dismissed, **like any delay before charges are filed**, must be scrutinized under the Due Process Clause, not the Speedy Trial Clause.")[emphasis added], citing <u>United States v. Marion</u>, 404 U.S. 307, 313 (1971)(stating that the Sixth Amendment "would seem to afford no protection to those not accused, nor would they seem to require the Government to discover, investigate, and accuse any person within any particular period of time").   Accordingly, we find that Ramirez's Sixth Amendment rights were not violated.

        4.      <u>The Fifth Amendment Right to Due Process, and Prosecutorial Vindictiveness</u>.

        a.     <u>Standard of Review</u>.   "The Fifth Amendment's due process clause prohibits unreasonable pre-indictment delay."   <u>United States v. Sprouts</u>, supra at 1041.   "To establish unreasonable pre-indictment delay, a defendant must show that the delay resulted in actual and substantial prejudice to his defense, and that the government intentionally delayed the indictment to gain a tactical advantage or to

harass him." Id. A defendant must prove actual prejudice by "identify[ing] witnesses or documents lost during the period of delay, and not merely make speculative or conclusory claims of possible prejudice caused by the passage of time." Id. In addition, the defendant bears the burden of demonstrating that the lost evidence is not available through alternative means. Id. "If the defendant fails to establish actual prejudice, we need not assess the government's rationale for the delay." Id.

With regard to prosecutorial vindictiveness, the defendant bears the heavy burden of demonstrating, by objective evidence, that the prosecution was intended to punish the defendant for exercising a legal right. See, United States v. Campbell, --- F.3d ---, 2005 WL 1340983 at *2 (8th Cir., June 8, 2005). In the alternative, "the defendant is entitled to a presumption of vindictiveness where there exists a reasonable likelihood of vindictiveness, which may arise when prosecutors increase the number or severity of charges." Id. However, the presumption is applicably only in "rare instances," and "does not arise just because action detrimental to the defendant was taken after the exercise of the defendant's legal rights," but rather, "the context must also present a reasonable likelihood of vindictiveness." Id.

b.    Legal Analysis. Here, Ramirez argues that he has suffered prejudice, by the approximately three-year delay from the date of the offense, which

was in June of 2002, because the passage of time has "harmed any realistic ability of his current counsel to discover new facts and circumstances surrounding the alleged possession of ammunition * * * and [] it is unknown whether the same witnesses can be located."  See, Defendant's Memorandum in Support of Motion to Dismiss, at p. 2.  Ramirez further contends that the prosecution is vindictive, because he is being prosecuted for successfully appealing his State Court conviction for the same offense. In addition, Ramirez asserts that his criminal record, which includes a fourth degree assault conviction, demonstrates prosecutorial vindictiveness, because the officers that are connected with this case, are the same officers, or are in the same Department, as those who were either involved in, or were victims of, the assault.  We find that Ramirez has not met his burden of establishing that his due process rights were violated, or that the Federal prosecution is vindictive.

As an initial matter, "[t]he fact that the federal government prosecutes a federal crime in a federal court that could or has been prosecuted as a state crime in state court does not itself violate due process."  United States v. Kriens, 270 F.3d 597, 602 (8th Cir. 2001), cert. denied, 535 U.S. 1008 (2002); see also, United States v. Graham, 323 F.3d 603, 607-08 (8th Cir. 2003)("[F]ederal courts repeatedly have rejected the idea that federal prosecution, after state proceedings, constitutes vindictive

- 17 -

prosecution.").[5]  "A mere allegation the government was prosecuting defendant because it was upset over losing at trial is not enough to establish vindictiveness." United States v. Hirsch, 360 F.3d 860, 864 (8th Cir. 2004).

In United States v. Purham, 725 F.2d 450 (8th Cir. 1984), the Court found that the defendant did not demonstrate actual prejudice, where he "relied solely on the admittedly 'real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost.'"  Id. at 453, quoting United States v. Marion, supra at 326.  The Court stated that "'[t]hese possibilities are not in themselves enough to demonstrate that [the defendant] cannot receive a fair trial and to therefore justify the dismissal of the indictment.'"  Id., quoting United States v. Marion, supra at 326.

---

[5]Although Ramirez does not raise the issue of selective prosecution, the Government has done so, and therefore, we briefly address it.  "In order to prevail on a claim of selective prosecution a defendant must show 1) that he has been singled out for prosecution while others similarly situated have not been prosecuted for similar conduct and 2) that the government's action in thus singling him out was based on an impermissible motive such as race, religion, or the exercise of constitutional rights." United States v. Leathers, 354 F.3d 955, 963 (8th Cir.), cert. denied, --- U.S. ---, 125 S.Ct. 285 (2004)[internal quotations omitted].  We find that Ramirez has not produced facts to establish either of those requirements, and therefore, to the extent that he has implicitly raised the issue of selective prosecution, we reject such an argument.

Similarly, here, Ramirez raises only the possibility that he may not be able to locate witnesses, or that he may not be able to discover new facts about the alleged offense.  Ramirez has not drawn our attention to any specific witnesses who have become unavailable, or have forgotten the events which gave rise to these charges.  See, United States v. Stierwalt, supra (holding that a sixteen-month delay did not violate the Fifth Amendment, even where the defendant made specific allegations of prejudice, by identifying two witnesses whose testimony was lost due to the delay).  Furthermore, Ramirez cannot rely on the length of the delay  to demonstrate actual prejudice.  See, United States v. Meyer, supra at 1251-52 (holding that there was no due process violation, even though there had been a delay of over three years between the date of the offense, and the date of Trial); cf., United States v. Basile, supra (involving a delay of over three years between the date of the offense and the date of the Indictment, during which time, the defendants were tried in State Court, and one was acquitted, while the other appealed his sentence); United States v. Garner, supra (involving a two year delay between the date of the defendant's arrest and the Federal Indictment).  Accordingly, we find that Ramirez has not demonstrated that the delay, which transpired here, has resulted in "actual and substantial prejudice" and, as a result, "we need not assess the government's rationale for the delay." United States

v. Sprouts, supra at 1041.  In any event, we find that Ramirez has not demonstrated

that the government intentionally delayed his Trial, in order to attain a tactical

advantage.  See, United States v. Perez-Perez, supra at 996; United States v. Stierwalt,

supra at 285.

Furthermore, we find that Ramirez has not proven, by objective evidence, that

the Federal prosecution is vindictive, and we find that he is not entitled to a

presumption of vindictiveness.   "Prosecutors have broad discretion in making

prosecutive decisions" and, "'[s]o long as the prosecutor has probable cause to

believe that the accused committed an offense defined by statute, the decision whether

or not to prosecute, and what charge to file * * * generally rests entirely in his

discretion.'"   United State v. Jacobs, 4 F.3d 603, 604 (8th Cir. 1993), quoting

Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978).

In United States v. Beede, supra at 952, the Court stated, as follows:

> Courts have permitted a subsequent federal prosecution
> after a conviction for the same conduct in state court,
> United States v. Simpkins, 953 F.2d 443, 444-45 (8th Cir.),
> cert. denied, 504 U.S. 928, 112 S.Ct. 1988, 118 L.Ed.2d
> 585 (1992); after an acquittal for the same conduct in state
> court, United States v. Staples, 74 F.2d 489, 490-91 (8th
> Cir. 1984); after a defendant successfully obtains the
> suppression of evidence in the state court and the
> consequent dismissal of the state charges for lack of

evidence, [United States v.] Amuny, 767 F.2d [1113] at 1116, 1119 [(5th Cir. 1985)]; United States v. Renfro, 620 F.2d 569, 573-74 (6th Cir.), cert. denied, 449 U.S. 902, 101 S.Ct. 274, 66 L.Ed.2d 133 (1980); after the state court prosecution is dismissed for failure to provide a speedy trial, United States v. Nelligan, 573 F.2d 251, 254-55 (5th Cir. 1978); or after a successful challenge to the jurisdiction of the state court.  United States v. Bartlett, 856 F.2d 1071, 1074-75 (8th Cir. 1988).  If prosecution in both the state and federal systems is permissible in those circumstances, a deferral of prosecution to the federal system after a state court defendant elects to proceed to trial should also be permissible.

Thus, the Court held that there was neither a presumption of vindictiveness that arose, nor a violation of the defendant's due process rights.  Id.; see also, United States v. Kriens, supra at 602 (holding that the presumption of vindictiveness did not apply "simply because the federal government prosecuted [the defendant] after he refused to plead guilty in state court").

Here, Ramirez contends that the Federal prosecution is vindictive, because he is being punished for successfully appealing his conviction.  We disagree.  The facts of this case are not so inherently different than those which were cited by the Court in United States v. Beede, supra.  In addition, the motives of the law enforcement officers, who were involved, directly or indirectly, in Ramirez's previous conviction of assault, are irrelevant, because they are not attributable to the Federal prosecutors.

- 21 -

"[A] finding of vindictiveness vel non can only be made on the basis of evidence pertaining to the prosecutor's motives."  United States v. Leathers, supra at 961-62. In Leathers, supra at 961-62, the defendant argued that the State prosecutor had "referred the matter for federal prosecution because he was dissatisfied with the bail-bond amount set in the state court," and the defendant also attempted to infer an improper motive from a conversation between the State and Federal prosecutors, about the light sentence that the defendant would receive, as a result of his State convictions.  The Court found that the defendant had failed to show that the "federal prosecutors were actuated by any impermissible motive," because the State prosecutor's motives were not attributable to the Federal prosecutors.  Id. at 962. Furthermore, the Court noted that "a defendant may be subject to a harsher sentence in federal court than the sentence he would receive in state court on charges based on the same conduct without implicating his due-process rights."  Id., citing United States v. Beede, supra at 951.  Therefore, the Court rejected the defendant's contention that his due process rights were violated as a result of a vindictive prosecution.[6]

---

[6]The Court, in Leathers, also held that the application of the Petite policy could not form the basis for a claim of improper prosecution.  United States v. Leathers, 354 F.3d 955, 963 (8th Cir.), cert. denied, --- U.S. ---, 125 S.Ct. 285 (2004).  Ramirez has

(continued...)

We find that Ramirez has not demonstrated that his prosecution was vindictive, that he is entitled to a presumption of vindictiveness, or that his due process rights have been violated. Accordingly, we recommend that Ramirez's Motion to Dismiss for Vindictive Prosecution and Outrageous Governmental Conduct be denied, in its entirety.

B.    The Validity of the Search Warrant.

1.    Standard of Review. The Fourth Amendment establishes that "a search warrant must be issued by a neutral and detached magistrate," Technical Ordnance Inc. v. United States, 244 F.3d 641,  647 (8th Cir. 2001), citing Johnson v. United States, 333 U.S. 10, 13-14 (1948), who will "assess the underlying factual circumstances so as to ascertain whether probable cause exists to conduct a search or to seize incriminating evidence, the instrumentalities or fruits of a crime, or contraband." United States v. Winningham, 953 F. Supp. 1068, 1077 (D. Minn. 1996), citing Warden v. Hayden, 387 U.S. 294 (1967); United States v. Johnson, 64 F.3d 1120, 1126 (8th Cir. 1995). A finding of probable cause must be based upon a

---

[6](...continued)
separately moved to compel the Government to comply with the Petite policy, which we addressed, and denied, in the accompanying Order that we issued on today's date.

consideration of all of the circumstances set forth in the supporting Affidavit, and is proper when a "fair probability [exists] that * * * evidence of a crime will be found in a particular place," or when "'a substantial basis [exists] for * * * conclud[ing]' that a search would uncover evidence of wrongdoing." United States v. Horn, 187 F.3d 781, 785 (8th Cir. 1999), quoting Illinois v. Gates, 462 U.S. 213, 236, 238 (1983), quoting, in turn, Jones v. United States, 362 U.S. 257, 271 (1960); see also, United States v. Gladney, 48 F.3d 309, 313 (8th Cir. 1995); United States v. Tagbering, 985 F.2d 946, 949 (8th Cir. 1993).

Probable cause is "a fluid concept -- turning on the assessment of probabilities in particular factual contexts" and, as such, is "not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, supra at 232; see also, Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 435 (2001); Ornelas v. United States, 517 U.S. 690, 697 (1996). In considering the issuance of a Search Warrant, probable cause must be viewed under a reasonableness standard, "the touchstone of the Fourth Amendment," which "is measured in objective terms by examining the totality of the circumstances." Ohio v. Robinette, 519 U.S. 33, 39 (1996), quoting Florida v. Jimeno, 500 U.S. 248, 250 (1991).

Search Warrant "[a]pplications and affidavits should be read with common sense and not in a grudging, hyper technical fashion." Walden v. Carmack, 156 F.3d 861, 870 (8th Cir. 1998); United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993). "In conducting such an examination, the Court should review the affidavits as a whole, and not on a paragraph-by-paragraph basis." United States v. Winningham, supra at 1077, citing United States v. Anderson, 933 F.2d 612, 614 (8th Cir. 1991); United States v. Townsley, 843 F.2d 1070, 1076-77 (8th Cir. 1988). Under the Fourth Amendment's preference for searches conducted pursuant to Warrants, see, Illinois v. Gates, supra at 236, Courts reviewing Search Warrants are to "accord great deference to the decision of the Judicial Officer who issued the Warrant," and must not engage in a de novo review. United States v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995); see also, Walden v. Carmack, supra at 870.

2.    Legal Analysis.  At the Hearing on the Motions, Ramirez requested that we review that the Search Warrant, in order to determine whether it was supported by a sufficient showing of probable cause. Our review of the Search Warrant, and the underlying application, confirms the appraisal of the issuing Judicial Officer, that ample probable cause supported the issuance of the Warrant, and further, that the Warrant was not otherwise fatally defective.

When probable cause for an arrest is based on information provided by an informant, "'a key issue is whether that information is reliable.'"  United States v. Koons, 300 F.3d 985, 993 (8th Cir. 2002), quoting United States v. Fulgham, 143 F.3d 399, 401 (8th Cir. 1998); see also, United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986)("[T]he informant's reliability, veracity, and basis of knowledge are relevant considerations -- but not independent, essential elements -- in finding probable cause.").  As our Court of Appeals has stated:

> In [Illinois v.] Gates, the Supreme Court explained that an informant's reliability and basis of knowledge "are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations:  a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." * * * 462 U.S. at 233, 103 S.Ct. at 2329.

United States v. Olson, 21 F.3d 847, 850 (8th Cir. 1995).

As a result, "'an informant's basis of knowledge [is] an important consideration, but not a rigid requirement, in the probable cause determination.'"  Id., citing United States v. Anderson, 933 F.2d 612, 615 (8th Cir. 1991).

Consequently, the "core question" is whether the information provided by the informant was reliable.  See, United States v. Williams, 10 F.3d 590, 593 (8th Cir.

1993)("The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable.").  Moreover, "[t]he statements of a reliable confidential informant are themselves sufficient to support probable cause."  United States v. Wright, supra at 975.  In turn, an informant is deemed reliable when his/her statements are corroborated by independent evidence.  See, United States v. Carpenter, 341 F.3d 666, 669 (8th Cir. 2003) ("[C]orroboration of minor, innocent details may support finding of probable cause."), citing United States v. Tyler, 238 F.3d 1036, 1039 (8th Cir. 2001); see also, United States v. Koons, 300 F.3d 985, 993 (8th Cir. 2002)("'Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence.'"), quoting United States v. Fulgham, 143 F.3d 399, 401 (8th Cir. 1998); United States v. Formaro, 152 F.3d 768, 770 (8th Cir. 1998)("[C]orroboration of the confidential informant's information by independent investigation is an important factor in the calculus of probable cause.").

Here, a sixteen-year old individual, who wished to remain anonymous out of concern of retaliation, reported to Young that s/he had heard two gunshots, which originated in the direction of Ramirez's residence, and that s/he had observed Ramirez

at or near his residence, holding a long firearm, which the individual believed to be a shotgun. Thus, we find that the individual's basis of knowledge -- namely, his or her personal observations and knowledge -- is fully known. In addition, the individual is unlike a typical informant, in that s/he appears to have been a concerned citizen, as opposed to a person who was trying to barter information for leniency. Although the individual wished to remain anonymous, for the purposes of the report, s/he was not anonymous to Young, who knew the individual. Furthermore, some of the details, at least as to the residence of Ramirez, were subsequently corroborated by Myers. Finally, Young averred that Ramirez had been previously convicted in the Wadena County District Court, for the felony crime of assault in the fourth degree, and that Ramirez was sentenced for that conviction on March 19, 2002, which made him a person prohibited from possessing a firearm, or ammunition.

We find that Young reasonably relied upon the information provided by the individual, and that the Search Warrant that issued was supported by probable cause to believe that Ramirez had committed a crime, and that evidence of that crime would be found in the place to be searched.[7] Accordingly, finding no other fatal errors in the

---

[7]Furthermore, we would be compelled, by the law of this Circuit, to find that the
(continued...)

Search Warrant, and none being drawn to our attention by Ramirez, we recommend that his Motion to Suppress Evidence Obtained as a Result of Search and Seizure be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

1.      That the Defendant's Motion to Dismiss for Vindictive Prosecution and Outrageous Governmental Conduct [Docket No. 18] be denied.

2.      That the Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 15] be denied.

Dated:  June 20, 2005                    s/Raymond L. Erickson
                                         Raymond L. Erickson
                                         UNITED STATES MAGISTRATE JUDGE

---

[7](...continued)
officers' reliance upon the Search Warrant was reasonable, because it "was not so facially lacking in probable cause as to preclude the executing officers' good faith reliance thereon." United States v. McNeil, 184 F.3d 770, 775 (8th Cir. 1999), citing United States v. Leon, 468 U.S. 897, 922-23 (1984).

**NOTICE**

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than July 8, 2005**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than July 8, 2005**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.